FILED IN THIS OFFICE NOV - 3 2026 Clerk U.S. District Court Greensboro, NC BY

# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

NASZEIR POWELL

1:26-CV-1301

Plaintiff,

v.

TOWN OF ELON, a municipal corporation

LORI OAKLEY, in their individual and official

capacity as Planning Director of the

TOWN OF ELON

E. F. OCAMPO, in their
individual capacity

ZACHARY T CANTAFFA, in
their individual capacity

Defendants.

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS PURSUANT TO CORUM 330 N.C. at 784, 42 U.S.C. § 1983**

**JURY TRIAL DEMAND**

Plaintiff, NASZEIR POWELL [Plaintiff], alleges as follows against the Defendants, TOWN OF ELON [Defendant 1] LORI OAKLEY [Defendant 2] E. F. OCAMPO [Defendant 3] and ZACHARY T CANTAFFA [Defendant 4]

## NATURE OF ACTION.

1. This civil action rises for compensatory and injunctive damages pursuant to 42 U. S.C 1983 for the deprivation of [Plantiff]'s rights secured by the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment secured to him by the United States Constitution.
2. [Plaintiff] brings that federal claim of 42 U.S.C. 1983 against the TOWN OF ELON
3. [Plaintiff] brings that federal claim of 42 U.S.C. 1983 against LORI OAKLEY, Planning Director, in their official and individual capacities.
4. [Plaintiff] brings that federal claim 42 U.S.C. 1983 against officer E. F. OCAMPO in their individual capacity.
5. [Plaintiff] brings that federal claim 42 U.S.C. 1983 against officer ZACHARY T. CANTAFFA in their individual capacity.
6. [Plaintiff] further brings a constitutional claim for damages and equitable relief pursuant Article 1 Section 19 of the North Carolina Declaration of Rights against the TOWN OF ELON [Defendant 1] and LORI OAKLEY [Defendant 2] in their official capacity as Planning Director on the grounds that [Plaintiff] has no other adequate state law to redress these constitutional violations.
7. [Plaintiff] alleges that [Defendant 1], [Defendant 2], [Defendant 3], and [Defendant 4] did act in concert to arbitrarily take and deprive [Plaintiff] of liberty and property through the manufacturing of exigent circumstances, curtilage trespass, the denial of due process, and intimidation based retaliation.
8. [Defendant 1], alongside [Defendant 2], shows a deliberate indifference to the State of North Carolina's Declaration of Rights considering the Law of the Land and the Fruits of One's Labor.

## THE PARTIES

9. NASZEIR POWELL [Plaintiff] is the principal owner at 718 Manning Avenue, Elon,

North Carolina, the property in question; whose principal address is 201 Elmira Street Burlington, North Carolina 27217

10. TOWN OF ELON [Defendant 1] is a municipal corporation situated in Township 3, Boone Station, North Carolina. Operating from 104 S Williamson Ave, Elon, NC 27244.
11. LORI OAKLEY [Defendant 2] is the Planning Director for [Defendant 1] where they did act as the decision maker in this matter.
12. E. F. OCAMPO [Defendant 3] is a police officer for [Defendant 1].
13. ZACHARY T CANTAFFA [Defendant 4] is a police officer for [Defendant 1].

## JURISDICTION

14. This court has subject matter jurisdiction under 28 U. S. C. 1331 (Federal Question), 28 U. S. C. 1343(a)(3) (Civil Rights).
15. This court has supplemental jurisdiction over this matter under 28 U. S. C. 1367(a).
16. This court has personal jurisdiction over the defendants via proper service.

## VENUE

17. Venue is proper within this district under 28 U. S. C. 1391(b). TOWN OF ELON [Defendant 1] does conduct business in and maintain a principal address established in Alamance County, North Carolina. LORI OAKLEY [Defendant 2] does act on behalf of the TOWN OF ELON in Alamance County; as so does E. F. OCAMPO [Defendant 3] and ZACHARY T. CANTAFFA [Defendant 4]. Furthermore, NASZEIR POWELL has been deprived of civil rights due to misconduct from the TOWN OF ELON [Defendant 1], LORI OAKLEY [Defendant 2], E. F. OCAMPO [Defendant 3], and ZACHARY T. CANTAFFA [Defendant 4] in Alamance County, North Carolina.

## BACKGROUND

18. [Plaintiff] is a farmer as well as a carpenter. [Plaintiff] has practiced in both fields since 2015 and, worked in both fields professionally since his high school graduation in 2019.
19. [Plaintiff] is the principal owner of the 1.184 acre tract of land that sits at 718 Manning Avenue, Elon, North Carolina. It is a remaining portion of the property originally owned by George Patrick Sr.; [Plaintiff]'s great-great grandfather.
20. The property sits in the extraterritorial jurisdiction of [Defendant 1].

21. [Plaintiff] has been caring for and cleaning the land since 2022, in order to preserve it for current and future generations.
22. On October 5th, of 2023 [Plaintiff] became the grantee of the property deed.
23. Upon obtaining the property, [Plaintiff] would begin receiving ordinance complaints from [Defendant 1] concerning grass, underbrush, and trash visible to the public as [Defendant 1] constituted these as an eyesore.
24. All that remained in the open field was an old basketball goal, a chair, a working vehicle in the driveway, and an old horse drawn plow on a hill in the distance.
25. [Plaintiff] would mow the field and would later begin farming operations in 2024. The ordinance complaints had slowed to a stop leading [Plaintiff] to believe the property was in compliance.
26. On March 20th of 2025 [Plaintiff] would find a letter from [Defendant 1] covering the property's no trespassing sign; calling him into a hearing about an alleged ordinance violation. Stating [Plaintiff] must connect to the town water or demolish the structure.
27. On April 8th of 2025, [Plaintiff] would attend the public hearing with [Defendant 1] in which [Defendant 2] was present as the final decision maker. Also in attendance as parties were 2 representatives of [Defendant 1]'s code enforcement.
28. [Defendant 1's code enforcement representative presented up close, ground level images of the outside of the home and surrounding curtilage they stated they had obtained themself; after they stated there was a complaint by a neighbor of a resident in danger.
29. There has been no resident at 718 Manning avenue since 2020.
30. The home was secured and structurally sound.
31. The result of the hearing was [Defendant 2] making the decision to order [Plaintiff] to begin to demolish the family home in 90 days or [Defendant 1] would demolish it on [Plantiff]'s behalf and place a lien on the property.
32. [Plaintiff] at the time was 23 years of age, alone in a room with 3 government officials 20+ years his elder, and under duress of a potential lien and loss of family land, [Plaintiff] did agree to comply. [Plaintiff] stated, voice audibly shaking, he would pursue a controlled burn through the volunteer fire department with the intent to allow the home to be used as training if possible or demolish the home himself if there was no other choice.
33. [Plaintiff] was told the hearing had been recorded, [Plaintiff] did not receive a copy.
34. The hearing is not recorded in [Defendant 1]'s town minutes.

35. The hearing is not recorded as being on [Defendant 1]'s town agenda.

36. Via email, [Defendant 2] notified officials of [Defendant 1], including representatives from [Defendant 1]'s Fire Department and Code Enforcement, of the meeting's conclusion.

37. [Defendant 2] states that [Plaintiff] had been presented the option to either bring the home up to code or to demolish the home due to a minimum housing violation; and that [Plaintiff] had optioned to demolish the home via controlled burn with the local fire department.

38. At around midnight on April 20th of 2025, [Plaintiff] would be involved in a traffic stop with [Defendant 1]'s police department while traveling past the lot of Glen Raven Center Pursuant N.C. Gen. Stat § 20-111(2) while leaving his grandmother's home after a gathering. [Plaintiff]was traveling to visit his aunt. None of whom live in [Defendant 1]'s municipality.

39. [Plaintiff] was ordered to step out of the vehicle under probable cause of marijuana odor and detained. The officer charged [Plaintiff] with a M1 Pursuant N.C. Gen. Stat § 90-95(D)(4), after measuring the weight of an entire tobacco pouch which held a whole tobacco leaf.

40. [Plaintiff] would receive an OFA which was stricken in error after finding the citation had been duplicated with separate hearing dates.

41. [Plaintiff] would attend 6 hearings for this matter over the course of a year and a half, none of which the officer would attend, before the charges were dismissed (August 25th of 2026).

42. [Plaintiff] would be involved in yet another traffic stop on June 9th of 2026 with [Defendant 1]'s police department, in the same location, Pursuant N.C. Gen. Stat § 20-183.8(A)(1). This would be only 10 days prior to the scheduled final hearing of the initial encounter a year prior.

43. [Plaintiff] was followed from the Food Lion on West Webb Avenue in Burlington, North Carolina to the Shell Gashouse on the same road. The officer would wait for [Plaintiff] to get fuel, pay, and head back towards his home, as [Plaintiff ]had only left home for fuel and groceries.

44. [Plaintiff] was pulled over while traveling past the lot of Glen Raven Center. Again, [Plaintiff] was told to step out of the vehicle; this time under no probable cause.

[Plaintiff] would be detained, handcuffed and placed in the back of a locked squad car for nearly 2 hours; 1 of which was spent waiting on a county sheriff K9. The vehicle was sniffed, searched, and then [Plaintiff] was freed to go.

45. This charge was dismissed and disposed of on October 16th of 2026.

46. On April 30th of 2025, [Defendant 2] would ask for updates on the demolition stating it needed to begin by July 7th of 2025.

47. On May 3rd of 2025, [Plaintiff] noticed the string of emails and clarified that they had been instructed to reconnect to [Defendant 1]'s municipal water or demolish the property under the threat of [Defendant 1]'s intent to demolish and subsequent lien if [Plaintiff] did not comply.

48. [Plaintiff] went on in the same message to further state, "I have never been connected to the city water and wanted clarification on why that wording was chosen; and, also, why were these stipulations not made aware to me in our meeting? I was strictly operating under the impression that I had no choice. I have not yet seen any correspondence from the fire department. P.S.- please refrain from covering my no trespassing sign with any more documentation. Have a great weekend."

49. On May 5th of 2025, [Defendant 2] stated "It is my understanding that the letter that was mailed to you was the standard Findings of Fact letter for a minimum housing violation. I am not sure why that particular box was checked, except that if you did decide to bring the structure up to code and use it as a house again, it would need to be hooked up to water and sewer. In your case, I imagine that would mean well and septic. Since you are planning on having the structure demolished, I don't believe you need to worry about that…"

50. [Defendant 2] would then include representatives from State Code Enforcement. One responded stating "He would have to repair or demolish the house by the date stated on the order. Has the original plan of fire training changed?"

51. [Defendant 2] stated the home would need to be completely emptied before a controlled burn could be conducted.

52. In a separate email chain that began on May 5th [Plaintiff] notified [Defendant 2] that efforts to coordinate a controlled burn were under way. However, [Plaintiff] wanted to clarify why the demolition was necessary, so [Plaintiff] requested a meeting with [Defendant 1] and [Defendant 2] that would include his county as well since the property

is in [Defendant 1]'s ETJ.

53. [Plaintiff] would request that hearing with [Defendant 2] multiple times for clarification of facts about the property zoning and [Defendant 1] and [Defendant 2]'s ability to enforce such actions on the property, and on what grounds the home would need to be demolished as it had never been explicitly stated.
54. There were never any structural engineers involved, or consent given to enter the protected areas of the yard or the home for anyone to be able to determine the safety of the secured structure.
55. [Defendant 2], in response to [Plaintiff]'s request, only sent rezoning applications, fee scheduling for utilities, and a text amendment application. None of which were requested by [Plaintiff].
56. The Controlled burn was denied on May 9th of 2025 due to a slight sag in the roof, the tree line, and residential buildings on the next road.
57. [Plaintiff] would begin demolition on June 30th of 2025, as [Plaintiff] realized they would not be receiving an answer or be granted a hearing from [Defendant 1] and [Defendant 2] before the deadline given which was quickly approaching.
58. [Plaintiff] did approach the county, to which they were told it was a municipal matter.
59. [Plaintiff] did notify [Defendant 2] that the demolition had begun.
60. [Plaintiff] through his own labor did demolish the home.
61. The kitchen was a small addition to the home and fell after 5 days of labor with the help of his personal truck, a tow strap, and a sledge hammer.
62. The main portion of the home did not budge, much less collapse; even after the use of a sledge hammer, the same truck, and a Kubota tractor. It still remains standing.
63. [Plaintiff]'s truck is no longer in working order.
64. Much of the interior was removed by hand leaving only the frames of the structure.
65. All sentimental items were removed from the home on [Plaintiff]'s own volition and upon request from [Plaintiff]'s elders after they were informed of the order to demolish. Many of them lived out of state or were otherwise unable to visit.
66. What remains of the home is now covered with weather proofing to prevent further damage; alongside it is a pile of rubble as [Plaintiff] has exhausted his resources at the time this complaint was raised.

## <u>FIRST CAUSE OF ACTION</u>

**(42 U.S.C 1983 Monell Doctrine)**

67. [Plaintiff] realleges and incorporates paragraphs 1-66
68. [Defendant 1] is liable under *Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978)* due to [Plaintiff]'s constitutional rights being infringed upon by multiple municipal departments, their customs, and their practices, which were used to unconstitutionally deprive [Plaintiff] of liberty and property.
69. The coordinated, extraterritorial jurisdiction surveillance and targeted traffic stops constitute a widespread, and persistent, municipal custom.

**<u>SECOND CAUSE OF ACTION</u>**

**(42 U.S.C. 1983 Violation of Procedural Due Process)**

70. [Plaintiff] realleges and incorporates paragraphs 1-69
71. 14th Amendment violation.
72. [Defendant 2] did act under color of law at all times.
73. [Defendant 2] did act as final decision maker in hearing of less than 4 officials, none of whom were council members.
74. [Defendant 1] did use previous grass height and debris as reason to escalate to demolition, even after initial compliance. *(Shoemaker v. City of Howell (2015)).*
75. [Defendant 1] did threaten [Plaintiff] with a lien if they did not comply with the reconnect or demolish order. The property has never been connected to the town utilities.
76. [Defendant 1] and [Defendant 2] failed to adhere to procedural due process by trespassing curtilage, failing to give proper notice of exact code violations, failing to notify [Plaintiff] of all compliance options, failing to record public hearing in town minutes and town agenda, and denying [Plaintiff]'s motion for a hearing prior to ordering the demolition. *(Knight v. Higgs, 189 N.C. App. 696 (2008)) (Brown v. City of Winston Salem (2005))*

**<u>THIRD CAUSE OF ACTION</u>**

**(42 U.S.C. 1983 Violation of Substantive Due Process)**

77. [Plaintiff] realleges and incorporates paragraphs 1-76
78. 14th amendment
79. Arbitrary and capricious enforcement of demolition order. *(Cantazaro v. Weiden (1999)).*

80. [Defendant 1] and [Defendant 2] claimed resident danger as grounds to approach home curtilage to attain photographs, there have been no residents since 2020.
81. [Defendant 1] did not clarify what housing violations were out of compliance and would need to be remedied to prevent demolition. *(Bonner v. City of Brighton (2012)).*
82. Home was secured
83. Home was out of view
84. Home posed no threat to public what so ever

**FOURTH CAUSE OF ACTION**

**(42 U.S.C. 1983 Unconstitutional Taking Without Just Compensation)**

85. [Plaintiff] realleges and incorporates paragraphs 1-84
86. 5th Amendment violation
87. 14th amendment violation
88. [Defendant 1] and [Defendant 2] did threaten to demolish the home if not connected to the town water utility, or demolished by [Plaintiff]. *(Knick v. Township of Scott, 588 U.S. 180)*
89. [Defendant 2] failed to clarify grounds for demolition.
90. [Defendant 2] sends fee schedules and rezoning application in response to [Plaintiff]'s request for hearing.
91. [Plaintiff] did comply under duress, by demolishing the home by hand.

**FIFTH CAUSE OF ACTION**

**(42 U.S.C. 1983 Curtilage Trespass)**

92. [Plaintiff] realleges and incorporates paragraphs 1-91
93. 4th Amendment violation under the United States Constitution.
94. Property does have a no trespassing sign
95. Property does have tree line indicating curtilage area *(United States v. Dunn, 480 U.S. 294 (1987) ).*
96. [Defendant 1] did trespass the property curtilage in order to attain photographs presented in hearing. *(N.C.P.I.—Civil 805.00)*

**SIXTH CAUSE OF ACTION**

**(42 U.S.C. 1983 Malicious Prosecution Intentional Infliction of Emotional Distress)**

97. [Plaintiff] realleges and incorporates paragraphs 1-96

98. 1st amendment Violation

99. [Defendant 3] did conduct a traffic stop on [Plaintiff] outside of [Defendant 1]'s municipality 12 days after the hearing.

100. [[Defendant 4] did conduct a traffic stop 10 days prior to final court hearing from the stop conducted by [Defendant 3].

101. [Defendant 4] did perform the traffic stop without probable cause.

102. [Defendant 4] did perform a de facto arrest without probable cause.

103. [Defendant 4] did hold [Plaintiff] in de facto arrest for an hour while waiting for county K9-unit. *(Rodriguez v. United States, 575 U.S. 348 (2015) )*

104. [Defendant 4] did search the vehicle without consent and without probable cause.

105. [Defendant 4] did perform the traffic stop for over 2 hours.

106. Both traffic stops occurred in the same location.

107. [Plaintiff] did attend a total of 7 hearings in association with the traffic stops.

108. Neither officer attended any of the hearings.

109. All charges were dismissed and disposed of without leave less than two months apart from each other.

## SEVENTH CAUSE OF ACTION

### (North Carolina Common Law Inverse Condemnation)

110. [Plaintiff] realleges and incorporates paragraphs 1-109

111. Pursuant N.C. Gen. Stat § 40A-3

112. [Defendant 1] did acknowledge [Plaintiff]'s compliance with yard ordinance violations

113. [Defendant 1] escalates to demolition without cause only citing minimum home compliance

114. [Defendant 1] states [Plaintiff] must reconnect to town water or demolish the home.

115. The home has a well and septic tank and has never been connected to municipal utilities.

116. [Defendant 2] communicates to state code enforcement that [Plaintiff] was offered the option to bring home up to code.

117. Pursuant N.C. Gen. Stat §160D-1201 et. seq. [Plaintiff] was not made aware as to why the home was ruled out of compliance.

118. Pursuant N.C. Gen. Stat § 160D-1201 et. seq. [Plaintiff] was not offered the option to bring home up to code. (Bonner v. City of Brighton, *495 Mich. 209 (2014))*

## <u>EIGHTH CAUSE OF ACTION</u>

### (North Carolina Common Law Violation of NC Open Meetings Law)

119. [Plaintiff] realleges and incorporates paragraphs 1-118

120. Pursuant N.C. Gen. Stat §143-318.16B

121. [Defendant 1] failed to place the hearing on the town agenda.

122. [Defendant 1] failed to place the hearing in the town minutes.

123. The public was not made aware of, and were therefore barred, from this proceeding. Pursuant N.C. Gen. Stat. §160D-406. *(Boney Publishers, Inc. v. Burlington City Council, 151 N.C. App. 651 (2002)). (Brown v. City of Winston Salem, 171 N.C. App. 409 (2005))*

## <u>NINETH CAUSE OF ACTION</u>

### (North Carolina Common Law Ultra Vires Action)

124. [Plaintiff] realleges and incorporates paragraphs 1-123

125. Pursuant N.C. Gen. Stat §160D-406 there was no quorum when demolition order was issued by [Defendant 2]. *(Vaughn v. Duke 232 Ga., 207 (1974))*

## <u>TENTH CAUSE OF ACTION</u>

### (North Carolina Common Law False Imprisonment)

126. [Plaintiff] realleges and incorporates paragraphs 1-125

127. Pursuant N.C. Const. art. 1, § 19

128. Pursuant N.C.P.I.-Civil. 802.00

129. [Defendant 4] did hold [Plaintiff] in de facto arrest without probable cause under N.C. Gen. Stat.§15A-401. *(Mobley v. Broome, 248 N.C. 54 (1958))*

## <u>ELEVENTH CAUSE OF ACTION</u>

### (Direct Claim Under North Carolina Constitution Pursuant to Corum)

130. [Plaintiff] realleges and incorporates paragraphs 1-129

131. The actions of [Defendant 2], acting under the color of state law, did directly violate [Plaintiff]'s rights secured by N.C. Const. art. 1, § 19.

132. Immunity is unavailable to [Defendant 2] because this is a direct claim under North Carolina Constitution for violation of [Plaintiff]'s constitutional rights.

133. Plaintiff has no other adequate remedy under North Carolina state law to redress the specific violations of their constitutional rights. *(Corum v. University of North Carolina, 330 N.C. 761 (1992))*

## **PRAYER FOR RELIEF**

134. WHEREFORE, [Plaintiff] respectfully prays for relief in their favor in this court as follows:

135. Declaratory judgement from this court declaring that the policies, actions, and omissions described herein did aim to violate and infringe on the civil rights of [Plaintiff]

136. Injunctive relief from the court adjoining all of the defendants and their confidants and associates from working in concert to further infringe on [Plaintiff]'s civil rights and the civil rights of the public.

137. Compensatory damages awarded by the court, to [Plaintiff], against all defendants jointly in an amount to be determined at trial for economic loss, personal physical labor and costs associated, harassment, stalking, emotional distress, humiliation, and attrition that did infringe on [Plaintiff]'s liberty and property which periodically forced [Plaintiff] into isolation due to safety, resource, reputation, and financial concerns.

138. Punitive damages awarded by the court, to the [Plaintiff], for the willful misconduct of all defendants.

139. A judgement by the court that defendants be held responsible for taxes associated with the damages in supplementary.

140. A judgment by the court that all defendants be held responsible for all court fees associated with this matter.

141. A judgement by the court for other and further relief for [Plaintiff] as the court deems just and proper.

November 3rd, 2026. Naszeir Powell Naszeir Powell November 3rd, 2026
201 Elmira Street, Burlington, North Carolina, 27217
naszeirpowell013@gmail.com (336) 693-2559